## Erie Mantel and Tile Company v. Carr et al.

*Execution—Attachment execution—Funds in hands of master in partition.*
Funds in the hands of a master in partition may be attached under a writ of attachment execution, and this is so even before he has filed a final report.

Rule to quash the writ of attachment and *sur* rule for judgment. C. P. Crawford Co., Sept. T., 1924, No. 84.

*Otto Kohler*, for plaintiff.

*C. Victor Johnston* and *Albert L. Thomas*, for defendant and garnishee.

PRATHER, P. J., Dec. 8, 1924.—From the answer of the garnishee, as well as from the proceedings at No. 1, May Term, 1922, partition proceedings in equity, it appears that there is in the hands of the garnishee about $1700 belonging to the defendant, Mrs. George B. Carr, formerly Catherine Carr. It also appears that the attachment execution in this case issued upon judgment No. 358, May Term, 1924, for $179.68 and costs, wherein the Erie Mantel and Tile Company was plaintiff and Mrs. George B. Carr defendant.

The relation of the garnishee to this fund is that of master in a partition proceeding in equity, and the amount due defendant, approximating $1700, is a part of the proceeds of the real estate of George A. W. Carr awaiting distribution by said master.

The first question arising is whether such moneys are attachable in the hands of a master.

The case of Piper v. Piper, 7 Dist. R. 135, holds that money in the hands of a master is not *in custodia legis*, and may be attached. In Fenton v. Fisher, 106 Pa. 418, the Supreme Court held, as expressed in the syllabus: "A trustee appointed by the Orphans' Court to make a sale in partition is not a public officer, and the interest of a party in the proceeds in the hands of such trustee is subject to attachment execution."

Eriel Mantel and Tile Company v. Carr et al.

The Supreme Court in the same case proceeded to say: "Under the statute, for purpose of sale, account and distribution of the proceeds, the trustee stands as if an executor or administrator. His office is of the same nature as regards the sale. He is not in any sense a public officer, nor is he a mere agent of the court, as a receiver."

It is also urged, even though moneys belonging to the debtor, heir or beneficiary be attachable in the hands of a master, they are not so until after he has filed his final report.

In Weeter's Estate, 21 Pa. Superior Ct. 241, Henry Weeter, testator, gave his estate, consisting of realty and personalty, to his widow for her life, with power to sell, convert and use, and provided that the remainder, if any, should go to his son, John Weeter, and others. An attachment execution issued after the death of Henry Weeter's widow against the interest of John Weeter. One of the questions involved was whether this interest was subject to attachment. On this question the Superior Court said: "We think, therefore, that he (John Weeter) had a present vested interest in the estate of his father at the time of the father's death, subject to the life estate of his mother, and that such interest was converted into personalty by the terms of the will and was the subject of attachment in the hands of the executors: Fenton v. Fisher, 106 Pa. 418. It follows, therefore, that the appellant's attachment, which was first served upon the executors, was entitled to the distributive share of John Weeter."

In Hess's Estate, 27 Pa. Superior Ct. 498, wherein it was held that the indefinite and undetermined interest of a judgment debtor was attachable, the Superior Court said: "The Act of April 10, 1849, § 11, P. L. 619, authorized the issuing and service of an execution attachment at any time after the interest of any person in the estate of a decedent had accrued by reason of the death of such decedent. The effect of this was to make clear the legislative intention that the interest of any person in the estate of a decedent should be subject to the attachment before the amount of such interest had been determined, but the extent of the rights acquired by the attaching creditor, and the conditions subject to which those rights are to be exercised, remain subject to the provisions of the Act of 1843, above referred to. The appellant attached the uncertain interest of his debtor in an unadministered estate." See Stiffler's Estate, 79 Pa. Superior Ct. 361.

In Sinnickson v. Painter, 32 Pa. 384, the Supreme Court said: "We are, therefore, of opinion that a foreign attachment will lie against a legacy or a distributive share before any settlement of the estate of a decedent; and it is in the power of the court to mould the judgment against the executor or administrator into such form that no injustice will be done to any one."

In Lorenz's Admin'rs v. King, 38 Pa. 93, the Supreme Court, quoting this rule ipsissimis verbis, then said: "The same rule is applicable to attachment executions under the Acts of April 13, 1843, and April 10, 1849."

Where sufficient assets in the hands of a garnishee are admitted, there is no difficulty in satisfying an attaching creditor, so far as the amount of the bequest extends. And even where there are not sufficient assets, the court can mould the judgment accordingly: Lorenz's Admin'rs v. King, 38 Pa. 93; Ellwanger v. Moore, 206 Pa. 234; Maurer v. Kerper, 102 Pa. 444.

It follows that the money of the defendant debtor in the hands of the master as garnishee is subject to attachment, and, therefore, that the rule to quash should be discharged and the rule for judgment be made absolute.

Now, Dec. 8, 1924, rule to quash writ of attachment is discharged and the rule for judgment in favor of attaching creditor is made absolute.